E. Leo Milonas, J.
Defendant was arrested in Macy’s department store by a special patrolman employed by the store. After the arrest, defendant’s handbag was searched and a key to a locker at the Port Authority Bus Terminal was found in the handbag. Two hours after this search the special patrolman proceeded to the locker, opened it with the key, and removed various property which, allegedly, belonged to Macy’s. Defendant was charged with petit larceny and criminal possession of stolen property.
Defendant now moves to suppress the property taken from the locker on the grounds that the search was in violation of the Fourth Amendment of the United States Constitution (Mapp v Ohio, 367 US 643). The applicable portion of the Fourth Amendment states the following: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated”.
While the search incident to defendant’s arrest was valid (Chimel v California, 395 US 752), it was improper for the special patrolman to take the fruits of the search, i.e., the key, to the locker and open up the locker without a search warrant. However, the Fourth Amendment’s protection against unlawful searches and seizures applies solely to governmental action. "Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies” (Burdeau v McDowell, 256 US 465; *206 People v Horman, 22 NY2d 378, cert den 393 US 1057). Thus, if an illegal search and seizure were conducted by a private citizen not connected with any governmental agency, the Fourth Amendment would not be applicable and would not require the exclusion of any evidence illegally seized (Burdeau v McDowell, supra; People v Horman, supra; People v Defore, 242 NY 13; People v Richter’s Jewelers, 291 NY 161).
In the instant case, the search was conducted by a special patrolman employed by Macy’s department store. Accordingly, the issue to be determined is whether such special patrolman is a private citizen or an "agent of the government”.
A "special patrolman” is appointed pursuant to subdivision e of section 434a-7.0 of the Administrative Code of the City of New York. The statute authorizes the New York City Police Commissioner to appoint and swear any number of special patrolmen to do special duty on behalf of their employer, and "The special patrolmen so appointed shall be subject to the orders of the commissioner and shall obey the rules and regulations of the [police] department and conform to its general discipline and to such special regulations as may be made and shall during the term of their holding appointment possess all the powers and discharge all the duties of a peace officer while in the performance of their official duties” (emphasis added). Furthermore, the appointment as special patrolman may be revoked at any time by the police commissioner.
The District Attorney states that the motion should be denied under the authority of People v Horman (supra). In that case, the Court of Appeals held that a department store detective had no connection with the police and was merely a private citizen. Therefore, the Fourth Amendment did not apply, and evidence illegally seized by the detective was admissible in a criminal prosecution. However, the defendant distinguishes Horman from the instant case in that, in this case, special patrolmen in New York City are licensed by the City of New York, appointed by the police commissioner and possess powers beyond those of an ordinary citizen.
Special patrolmen are not members of the Police Department (Administrative Code, § 434a-7.0, subd e) and are not "peace officers” as defined by the Criminal Procedure Law (CPL 1.20, subd 33; Velez v Sugarman, 75 Misc 2d 746; People v Rivera, 72 Misc 2d 985; cf. People v Perez, 79 Misc 2d 88). In both Rivera and Perez, a defendant was charged with resisting *207 arrest in that he prevented a "peace officer” from effecting an authorized arrest. The arrest had been made by a special patrolman. The issue was whether the special patrolman was a "peace officer,” which was necessary in order to convict the defendant of the crime of resisting arrest (see Penal Law, § 205.30). Rivera said a special patrolman is not a peace officer, while Perez said that he is. In Velez v Sugarman (supra) the issue was whether special patrolmen have the right to carry weapons without a license. Section 265.20 of the Penal Law states that "peace officers” are exempt from obtaining a license. The court held that special patrolmen are not peace officers and cannot carry firearms without obtaining a license.
However, the issue in this case is not whether a special patrolman is a "peace officer” as defined by CPL 1.20 (subd 33); the issue is whether a special patrolman is an agent of the government to whom the Fourth Amendment prohibitions apply.
In People v Brown, NYLJ, Dec 15, 1970, p 19, col 2) the special officer was an employee of the New York City Department of Hospitals, employed to maintain security at Harlem Hospital. He was not a peace officer. He arrested the defendant and conducted an illegal search. In granting the motion to suppress, the Appellate Term stated that although not a peace officer, the officer was an "agent of the city government cloaked with police powers and participating in the governmental function of safeguarding a municipal facility.”
In People v Bowers (77 Misc 2d 697) the defendant, a high school student, was illegally searched by a school security officer. The security officer was a "special patrolman” appointed pursuant to the Administrative Code (§ 434a-7.0, subd e). The court granted the motion to suppress, stating that the security officer was a government agent clothed with the authority of a peace officer, ultimately responsible to the police commissioner, and was placed in the school for security purposes, not educational purposes.
In the case at bar, the special patrolman is appointed by the police commissioner, subject to the orders of the commissioner, and may be removed by the commissioner. Furthermore, while on duty she had the power to arrest, book, fingerprint and photograph the defendant, bring the defendant to court, appear with the defendant in the detention facility pending arraignment, and "possesses] all the powers *208 and discharge^] all the duties of a peace officer while in the performance of [her] official duties.” (Administrative Code, § 434a-7.0, subd e.)
Although the special patrolman was employed by a private department store (unlike the special officers in Brown and Bowers, who were employed by city agencies), she was solely employed to provide security for the store (just as the patrolmen in Brown and Bowers were hired solely to provide security for the hospital and school respectively) and is licensed by the police department for this purpose. "It is * * * cynical to hold that the Fourth Amendment protections apply to searches by police officers but not by other agents of the city who are required to perform like governmental functions and clothed with the color of authority to make arrests. The government may not appoint agents to perform governmental functions, as here, and at the same time claim that they are immune from constitutional restrictions placed upon governmental authority” (People v Brown, supra).
Accordingly, defendant’s motion to suppress the evidence found in the locker of the Port Authority is granted.