THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MICHAEL SCOTT HASKINS, Respondent.

Third Department, June 26, 1975

D. Bruce Crew, III, District Attorney (Richard L. Parker of counsel), for appellant.

Samuel J. Castellino (M. Joseph Danaher of counsel), for respondent.

LARKIN, J. The defendant was indicted for the crime of criminal possession of a controlled substance in the fifth degree allegedly committed on May 3, 1974 in a dormitory facility of Elmira College. At the suppression hearing a Dean of Elmira College testified that, pursuant to a rumor from a confidential source that the defendant had marijuana in his room, he went to a dormitory suite in Twin Tower A on the campus in which defendant resided.

The suite consists of a central room surrounded by three private rooms in which the students live. The only way to enter one of the private rooms is by going from the hall into the central room and then from the central room into the private room. The Dean knocked on the hallway door and, receiving no answer, entered through the use of a passkey. Observing the defendant exiting from an unoccupied private room, not his own room in the suite, and after advising defendant of his intention to check the suite, the Dean entered the unoccupied room and saw what appeared to be marijuana lying openly on the floor. He requested that defendant bring the substance with him to his office and, upon

compliance with this request, the police were called and defendant was arrested.

The Dean testified that prior to the time he called the police he had acted entirely on his own and had absolutely no contact with any police agency. Relying heavily upon *People v Scott D.* (34 NY2d 483), and finding no consent to the search, County Court granted defendant's motion to suppress the alleged marijuana. We disagree with the conclusion of County Court as to the applicability of *People v Scott D. (supra)* to the instant factual situation and conclude that the order below should be reversed.

The evidence in question was obtained as the result of a search conducted without the assistance or involvement of any member of any police agency. "It has long been settled that our State's prohibitions against unlawful searches and seizures * * * do not require exclusion of evidence because a private individual has gathered it by unlawful means" *(People v Horman,* 22 NY2d 378, 381). Merely because a search was not conducted with police involvement, however, does not mean that the exclusionary rule arising from the Fourth Amendment does not apply. In *People v Scott D. (supra),* the defendant was a 17-year-old high school student who had been under observation for six months for possible dealing in drugs as a result of information obtained from a confidential source. After suspicious activities on the part of the defendant were observed by school authorities, the defendant was brought to the principal's office, stripped, searched and glassine envelopes containing a white powder and a vial containing pills were discovered.

The Court of Appeals in *Scott D. (supra)* vacated the conviction stating that "[h]igh school students are protected from unreasonable searches and seizures, even in the school, by employees of the State whether they be police officers or school teachers" *(People v Scott D., supra,* p 485). Defendant herein argues at length that even though Elmira College is not a public university, as would, for example, be a unit of the State University of New York, that the Dean was participating in State action in a similar manner to the teacher in *People v Scott D. (supra).* Such connections between Elmira College and the State are cited as the chartering of the college under the Education Law, receipt by the college of State and Federal aid, State ownership of college real property and, particularly, the involvement by the State in the college

disciplinary process through the 1969 enactment of section 6450 of the Education Law requiring private colleges in New York to adopt and file rules and regulations for college maintenance of public order. The State argues that Elmira College is not a governmental agency and, therefore, that the *Scott D.* case is not applicable.

We find it unnecessary to decide whether Elmira College is a governmental agency for the purpose of determining whether evidence uncovered through a search made by a school official should be suppressed in a criminal proceeding: We find that the same standards should apply to evidence seized by school officials, whether they be employed by Elmira College, or any other private college or school, by the State University of New York, or by a public high school.

The Court of Appeals stated in *People v Scott D.* (*supra,* pp. 486–487) that "[y]oungsters in a school, for their own sake, as well as that of their age peers in the school, may not be treated with the same circumspection required outside the school or to which self-sufficient adults are entitled. The fact of an epidemic danger in the school may not be ignored in theory or in reality. The dangerous drug prevalence in many schools and in many areas is a significant fact to be considered in determining the scope of reasonableness in making searches". A leading legal treatise, in discussing the subject of the admissibility in a criminal case of evidence seized by school officials, combines within one section cases arising from all types of schools, whether high schools or colleges, public or private (Ann 49 ALR3d 978).

Notwithstanding the recent legislation in New York lowering the age of majority to 18 for most purposes, we find that because of the unique circumstances of cases resulting from searches by school officials, they should be all judged by the same standards. Certainly the "epidemic danger in * * * drug prevalence in many schools" is no less a problem on the college campus than in the high school (*People v Scott D. supra,* p 487). To hold that evidence seized as the result of identical searches conducted by school officials should in one case be inadmissible because the search was conducted on a campus of the State University of New York and in another case be admissible because the search was conducted on the campus of a private school such as Elmira College would be completely unjust.

The court in *Scott D.* (*supra*) did not hold school officials to

the same standards in conducting their searches as those applying to police officers: "The ultimate issue is one often faced in the law: the balancing of basic personal rights against urgent social necessities, a balancing always fraught with difficulty, strain, and niceness of distinctions. Given the special responsibility of school teachers in the control of the school precincts and the grave threat, even lethal threat, of drug abuse among school children, *the basis for finding sufficient cause for a school search will be less than that required outside the school precincts." (People v Scott D., supra,* p 488; emphasis supplied.) The court in *Scott D.* specifically distinguished the prior case of *People v Overton* (24 NY2d 522) which upheld a search of a high school student's locker, predicated upon the consent of the school's principal, upon the ground that the student had no reasonable expectation of privacy in a locker over which the school authorities had retained extensive control. The search in *Overton* is similar to the search conducted in the instant case of a room in a suite, not occupied by defendant, to which he had no right of possession and in which he had no reasonable expectation of privacy. The searches in *Overton* and the instant case are in sharp contrast to the strip down search of the defendant's person, the fruits of which the court suppressed in *Scott D.*

It is significant in this case that there was no police involvement until after the search had been conducted and the evidence seized. A more strict standard would certainly apply if the search had been instigated by law enforcement officials or if law enforcement personnel had participated in the search to any significant degree, thereby directly tainting the search by the school official with State action *(Piazzola v Watkins,* 316 F Supp 624, affd 442 F2d 284; Ann 49 ALR3d 988, 989; see, also, *People v Brown,* 34 AD2d 108).

The order should be reversed, on the law and the facts, and the motion denied.

HERLIHY, P. J., GREENLBOTT, MAIN and REYNOLDS, JJ., concur.

Order reversed, on the law and the facts, and motion denied.