OPINION OF THE COURT
Eugene L. Nardelli, J.
Defendant has been indicted for criminal possession of a controlled substance in the third and seventh degrees, criminal possession of a weapon in the fourth degree, and criminally using drug paraphernalia in the second degree. He is charged with knowingly and unlawfully possessing a substance of an aggregate weight of one-half ounce or more containing cocaine, of knowingly and unlawfully possessing diazepam, of possessing a blackjack, and of knowingly and unlawfully possessing a quantity of inositol, under circumstances evincing an intent to use it for purposes of unlawfully mixing, compounding, or otherwise preparing a narcotic drug.
Defendant has moved for suppression of physical evidence taken from him on the ground that the search for and seizure of such evidence violated his 4th Amendment rights. A hearing was held on December 4, 1984. Testimony was given by Mr. Vasquez. His account was consistent and credible, and the court accepts it as true. Defendant testified on direct examination that the bag was, prior to the arrival of the police, in plain view at all times when he was in the basement security room and that he *980 had not seen any security guards open the bag before the police did. He had previously submitted an affidavit to the court that the bag had been held intact until the police arrived. On cross-examination, however, he admitted a prior statement that it was possible that the security people had opened the bag. He further admitted on cross-examination that it was possible that the search of the bag by the security people had taken place in the lobby. His testimony on direct was thus disingenuous and his affidavit false. The court regards all his testimony as suspect.
The People have the burden of proving that the defendant’s constitutional rights with respect to his statements were not violated. With respect to the search and seizure of the physical evidence, while the defendant has the burden of proof of illegality, the People have the burden of going forward to show the legality of the police conduct and the burden of proving that the defendant’s right to privacy in the bag had been vitiated by the private search.
FACTS
At about 9:00 p.m., on January 31, 1984, defendant was leaving the New York University Medical Center after visiting his doctor there. As he was about to go out he was told by Mr. Vasquez, a uniformed security guard employed by the Center, that his zippered canvas bag had to be examined. Defendant refused to submit his bag to such check and tried to get by Mr. Vasquez, who succeeded in restraining him and summoned assistance by radio. Help arrived within about 30 seconds, and defendant was handcuffed. Mr. Vasquez opened the bag and pulled out a paper bag containing a plastic bag of white pills. On the instruction of his supervisor, Mr. Vasquez replaced the pills in the canvas bag and zippered the canvas bag shut. Defendant was taken to the security office in the basement. The police arrived within 5 or 10 minutes. Police Officer McGovern reopened the zippered bag, removed its contents, and placed them on the table: the pills and the other articles for possession of which defendant has been indicted.
Mr. Vasquez was not an agent of the police or acting in cooperation with the police. The statements made to him were not obtained by force or the threat of force.
CONCLUSIONS OF LAW
Physical Evidence
The action of Mr. Vasquez in stopping defendant and asking him to open his bag was a reasonable one. The signs in the lobby *981 gave adequate notice of such requirement. But even if search of the bag had not been reasonable, the physical evidence so uncovered would not be suppressible. The 4th and 14th Amendments protection against unlawful searches and seizures does not apply to searches and seizures by other than government officers and agents. (United States v Jacobsen, 466 US —, 104 S Ct 1652 [1984]; Burdeau v McDowell, 256 US 465 [1921]; People v Horman, 22 NY2d 378 [1968].)
Two questions are raised by the difficult circumstances of this case: (1) did the rezipping of the bag restore defendant’s right of privacy with respect to the bag? and (2) did Officer McGovern’s removal of the items other than the pills removed by Mr. Vasquez constitute a new and unreasonable search and seizure by the police?
The first question clearly must be answered in the negative. In People v Adler (50 NY2d 730 [1980]), airline employees had opened a package in Los Angeles and handed it over to the police there. The Court of Appeals found the search and seizure by the Los Angeles police (of which the challenged search was a continuation) a valid one, saying, “It is thus immaterial whether * * * the package remained open when the police arrived in response to the agent’s call” (pp 737-738; accord, United States v Blanton, 479 F2d 327 [5th Cir 1973]; Barnes v United States, 373 F2d 517 [5th Cir 1967]). Moreover, although the package in Jacobsen had not been resealed and the court did state that respondents there “could have no privacy interest in the contents of the package, since it remained unsealed” (466 US_, 104 S Ct 1652, 1659-1660), the court assumed as facts that the tube had been replaced in the package, that it was visible only if the newspapers were removed, and that the plastic bags were visible only if one picked up the tube. Justice White, concurring in the result, contended that the decision should depend on a magistrate’s finding that the tube was in plain view in the box and that the bags of white powder were visible from the ends of the tube. He said the majority rationale sanctioned “warrantless searches of closed or covered containers or packages whenever probable cause exists as a result of a prior private search” (p_, p 1665). The majority said that he would have the case turn on the fortuity of whether the agents for the carrier had placed the tube back in the box but that the act could not create any privacy interest with respect to the package that would not otherwise exist (p_, n 17, p 1660, n 17). The rezipping of the bag is no less a fortuity and such act by Mr. Vasquez did not recreate any right of privacy in the bag or its contents which did not otherwise exist.
*982 The second question is a more serious one. The court in Jacobsen (supra, p_, p 1657), citing Walter v United States (447 US 649 [1980]), said that the “additional invasions of * * * privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search.” Walter involved the delivery by mistake of several sealed packages to a third party, who opened each package and found therein individual film boxes on the sides of which were suggestive drawings and explicit descriptions of their pornographic contents. The third party opened one or two of these film boxes but then turned the packages over to the F.B.I. At some later time, more than two months later in the case of one of the enclosed films, F.B.I. agents projected the films and viewed them. These viewings were held an illegal extension of the initial private search. The private party had done no more than hold the films up to the light. But the viewing in Walter is not analogous to the removal of the contents of defendant’s bag. What Officer McGovern did in removing the various items from the bag was analogous only to the handling of the various boxes in the packages in Walter and examining only the outside of such boxes. Nor is the subsequent testing of the substances found in defendant’s bag violative of the principle of Walter on the ground that it exceeded the scope of the private search. Testing could determine only whether or not the substances were controlled substances and thus compromised no legitimate privacy interest. (United States v Jacobsen, supra, at p_, at p 1662.)
In Jacobsen a cardboard box wrapped in brown paper was damaged by a forklift by a private freight carrier by whom it had been shipped. Employees of the carrier opened the package to examine its contents and found a sealed tube; after slitting the tube they found ziplocked plastic bags containing a white powder. Drug Enforcement Administration (DEA) agents were called. Before they arrived the plastic bags were replaced in the tube and the tube and its newspaper wrappings replaced in the opened, damaged box. A DEA agent removed the plastic bags from the tube, opened each bag, and made a field test on the spot. The powder was cocaine. The defendant claimed that the search of the box and the seizure of the cocaine had been illegal, but the court found no illegality.
Walter (supra) has been cited by the Supreme Court of Rhode Island in stating that unless the private search of a “black bag and its contents was so complete as to be virtually coextensive with the State Police search, it only partially frustrated defendant’s original expectation of privacy.” (State v yon Bulow,_RI —, 475 A2d 995, 1018.) That language, however, referred to the *983 State’s toxicological examination in a laboratory of the contents of a bag uncovered by private parties investigating a suspected attempted murder. The court found such laboratory test without a warrant to be improper; it distinguished Jacobsen in that the analysis of the cocaine in Jacobsen had been done in the field. But the rationale for approving the analysis of the white powder set forth in Jacobsen is equally applicable to a laboratory test. {See, United States v Jacobsen, p_, pp 1661-1663.) This court would not accept above statement as a proper reading of Walter.
Defendant has not specifically challenged the analysis of the contraband seized from him, and in the light of Jacobsen {supra), any such challenge would be futile. The chemical analysis of the seized substances to reveal whether they are illegal substances “and no other arguably ‘private’ fact, compromises no legitimate privacy interest.” (United States v Jacobsen, supra, at p_, at p 1662.)
None of the foregoing cases involved a situation where a police officer was called to act upon the detention of one citizen by another. All involved situations in which there was time to consider various courses of action and to obtain warrants if necessary. Ultimately we must determine the reasonableness or unreasonableness within the meaning of the 4th Amendment of Officer McGovern’s reopening the bag and removing the contents, and the time element is an essential one in considering that question. He arrived within 10 minutes of the opening of the canvas bag by Mr. Vasquez and he was told that it had been opened and a bag of white pills taken out. He was thus free to look where Mr. Vasquez had looked, and no assurance was possible that the first thing he touched or the first thing he saw would be the very bag of pills that Mr. Vasquez had taken out. Nor was such assurance necessary. Walter {supra) required not that any film box touched or looked at by the F.B.I. be one touched or looked at by the third party but only that the later step — two months later with respect to one of the films — of projecting the films not be taken without a warrant. Defendant was there in handcuffs. Officer McGovern owed it to a person detained in such circumstances to look into a bag with respect to which the expectation of privacy had already been defeated.
Defendant has argued that the absence of exigent circumstances requires the suppression of the drugs and the blackjack. Exigent circumstances, however, are only an alternate justification for a seizure. Once the expectation of privacy has been *984 defeated, as it was here by the prior opening of the bag, there is no need for exigent circumstances to justify a search or seizure.
DECISION
Defendant’s motion is in all respects denied.